Citation Nr: 1641958 
Decision Date: 10/31/16 Archive Date: 11/08/16

DOCKET NO. 12-20 480 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Indianapolis, Indiana


THE ISSUE

Entitlement to service connection for a skin condition.


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

Martha R. Luboch, Associate Counsel



INTRODUCTION

The Veteran had active duty service from June 1969 to January 1971.

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a September 2010 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Indianapolis, Indiana.

This appeal was most recently before the Board in November 2015, when the Board remanded the Veteran's claim for hemorrhoids and a skin condition. A March 2016 rating decision granted service connection for hemorrhoids with an evaluation of 0 percent effective November 24, 2009. As the Veteran has not appealed the effective date or disability rating assigned, that issue is no longer on appeal.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2015). 38 U.S.C.A. § 7107(a)(2) (West 2014).


FINDING OF FACT

The Veteran's skin condition is not etiologically or causally related to his active duty service, to include his conceded herbicide exposure in service.


CONCLUSION OF LAW

The criteria for an award of service connection for a skin condition have not been met. 38 U.S.C.A. §§ 1110, 1116 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309 (2015).



REASONS AND BASES FOR FINDING AND CONCLUSION

In letters dated in July 2010 and March 2010, the RO satisfied its duty to notify the Veteran under 38 U.S.C.A. § 5103 (a) (West 2014) and 38 C.F.R. § 3.159 (b) (2015). The RO notified the Veteran of: information and evidence necessary to substantiate the claim at issue; information and evidence that VA would seek to provide; and information and evidence that the he was expected to provide. The Veteran was informed of the process by which initial disability ratings and effective dates are assigned, as required by Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). 

The "duty to assist" contemplates that VA will help a claimant obtain records relevant to the claim, whether or not the records are in Federal custody, and that VA will provide a medical examination when necessary to make a decision on the claim. 38 C.F.R. § 3.159 (2015). VA has done everything reasonably possible to assist the Veteran with respect to his claim for benefits in accordance with 38 U.S.C.A. § 5103A (West 2014) and 38 C.F.R. § 3.159 (c) (2015). Relevant service treatment and other medical records have been associated with the claims file. The Veteran was also afforded a VA examination in February 2016, which, as discussed more fully below, is adequate to decide the claim. The examiners indicated that the Veteran's claims file was reviewed and fully explained the basis for the opinions provided. 

This matter was remanded in November 2015 so that the Veteran could be afforded a VA examination. This opinion adequately addresses the questions posed in the Board remand. As such, the Board finds that there has been substantial compliance with the terms of the Board's remand directives. D'Aries v. Peake, 22 Vet. App. 97, 105 (2008); see also Dyment v. West, 13 Vet. App. 141, 146-47 (1999).

Service Connection

Service connection will be granted for a disability resulting from disease or injury incurred in or aggravated by active military service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. §§ 3.303, 3.304. Service connection generally requires evidence of (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disease or injury. Hickson v. West, 12 Vet. App. 247 (1999). 

Under 38 C.F.R. § 3.303(b), an alternative method of establishing the second and/or third elements of service connection for a listed chronic disease is through a demonstration of continuity of symptomatology. Cf. Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013) (38 C.F.R. § 3.303 (b) does not apply to any condition that has not been recognized as chronic under 38 C.F.R. § 3.309 (a)). The claimed skin condition is not listed as a chronic disease. 

Lay persons may provide evidence of diagnosis and nexus under 38 U.S.C.A. § 1154(a); see Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). 

Additionally, certain diseases associated with exposure to herbicide agents (including Agent Orange) in Vietnam are presumed to be service connected if they are manifested to a compensable degree within a specified time period. See 38 C.F.R. §§ 3.307, 3.309. 

If a Veteran was exposed to an herbicide agent during active military, naval, or air service, the following diseases shall be service-connected if the requirements of 38 U.S.C.A. § 1116; 38 C.F.R. § 3.307 (a)(6)(iii) are met, even though there is no record of such disease during service, provided further that the rebuttable presumption provisions of 38 U.S.C.A. § 1113; 38 C.F.R. § 3.307 (d) are also satisfied: chloracne or other acneform diseases consistent with chloracne, Type 2 diabetes mellitus, Hodgkin's disease, multiple myeloma, non-Hodgkin's lymphoma, acute and subacute peripheral neuropathy, porphyria cutanea tarda, prostate cancer, respiratory cancers (cancer of the lung, bronchus, larynx, or trachea), and soft-tissue sarcomas (other than osteosarcoma, chondrosarcoma, Kaposi's sarcoma, or mesothelioma). 38 C.F.R. § 3.309 (e). In addition, on October 13, 2009, in accordance with authority provided in 38 U.S.C. § 1116, the Secretary of VA announced his decision to establish presumptions of service connection, based upon exposure to herbicides within the Republic of Vietnam during the Vietnam era, for three new conditions: ischemic heart disease, Parkinson's disease, and B cell leukemia. The final rule was issued in August 2010 and became effective August 31, 2010. See 75 Fed. Reg. 53,202 (Aug. 31, 2010). 

When there is an approximate balance in the evidence regarding the merits of an issue material to the determination of the matter, reasonable doubt will be resolved in each such issue in favor of the claimant. 38 U.S.C.A. § 5107 (b); 38 C.F.R. § 3.102. An appellant need only demonstrate that there is an approximate balance of positive and negative evidence in order to prevail. To deny a claim on its merits, the evidence must preponderate against the claim. Alemany v. Brown, 9 Vet. App. 518 (1996); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

In this case, the Veteran's service treatment records do not indicate any complaints, treatment, or diagnosis of a skin condition. The Veteran's discharge examination dated in January 1971, shows normal skin. 

In his November 2009 claim for VA benefits, the Veteran indicated that skin tags and moles began in "74". 

VA treatment records from December 2009 indicate that the Veteran had a blue nevus on his right cheek. The Veteran was informed that this was "a benign diagnosis" that required no further treatment. 

In statements dated in February 2010, a fellow service member reported that while serving in Vietnam, the Veteran and he were exposed to Agent Orange as well as extremely wet conditions. The fellow service member reported that he had developed jungle rot.

In a statement submitted in February 2010, the Veteran reported that during his time in Vietnam, especially in the summer of 1970, there was no relief from the sun, and he would often work unloading munitions without a shirt. He reported that since his service in Vietnam, he had developed skin tags, moles and dark spots on the side of his face.

VA treatment records from July 2015 indicate that the Veteran had a scattered erythematous scaly rash on his upper chest and back. VA treatment records from August 2015 show that the Veteran had a pityriasis skin rash on his posterior back. 

The Veteran was afforded a VA examination in February 2016. Diagnoses of benign nevus, skin tags, and moles were noted. The Veteran reported that he was frequently on active duty in underdeveloped jungle areas in the Republic of Vietnam with lack of access to service treatment facilities, adequate nutrition, and clean water for drinking and for adequate hygiene. 

The Veteran reported a history of cumulative exposure to sunlight with no shirt on. The examiner noted that the Veteran subsequently developed a mole on his right cheek some time following discharge from service, which the Veteran reported was "there a long time" but not able to describe an approximate date when it appeared. In December 2009, the Veteran was evaluated and a biopsy study was undertaken. The biopsy findings were consistent with a blue nevus on the right cheek. The Veteran reported that he was evaluated by a healthcare provider for an abscess on his upper back which was lanced and treated with medication. The Veteran denied skin eruptions during service. 

The examiner opined that based on the Veteran's history, physical examination, and available medical records, it was less likely than not (less than a 50 percent probability) that any current skin disability (including a blue nevus, skin tags, and benign nevi) had their onset in service, were related to conceded herbicide exposure in service, or were otherwise a result of a disease or injury in service, including prolonged sun exposure; and the Veteran's condition was not likely aggravated by service. The examiner elaborated that the available scientific and medical evidence did not support the conclusion that the skin conditions were associated with herbicide exposure or prolonged sun exposure. 

The examiner further explained that the blue nevus was a solitary blue colored mole that could present at birth or develop later on in life. The etiology of blue nevus was unknown and it was unclear as to whether there might be a genetic component. The blue nevus could be found on many areas of the body; however, most had been found on the head, neck, sacral area, back of the hands, and feet. The lesion had also been documented in oral cavities. 

The examiner stated that a review of current evidence based medical literature fails to document any connection between the appearance of blue nevus and cumulative exposure to ultraviolet (sun) rays. The examiner additionally stated that researchers have not been able to figure out what causes skin tags to grow. A number of controlled studies suggested a link between aging and friction of the skin. Many common skin tag locations were where the skin constantly rubbed against clothing or other skin. Additionally, the examiner noted that presumptive diseases associated with Agent Orange were soft tissue sarcomas and the available scientific and medical evidence did not support the connection that any current skin disability was associated with herbicide exposure such as Agent Orange. 

Analysis

The Veteran's exposure to herbicides as a result of military service has been conceded; in addition he has provided competent and credible evidence of in-service exposure to excessive sun and dampness. Thus, an in-service injury is demonstrated.

The presence of current skin disabilities is documented in the treatment and examination records and supported by the Veteran's statements.

The missing element; however, is a nexus to service. As detailed in the February 2016 VA examination report, the Veteran's current skin conditions, to include blue nevus, skin tags, and benign nevi, are not a presumed disability for purposes of service connection due to herbicide exposure, specifically, Agent Orange. Under 38 C.F.R. § 3.309, chloracne or other acneform diseases consistent with chloracne are presumed to have been caused by Agent Orange exposure, if manifested to a compensable degree within one year of exposure. However, chloracne has never been reported. The diagnosed blue nevus, skin tags, and benign nevi are not among the presumptive diseases. As such, presumed service connection as due to herbicide exposure is not warranted.

As for direct service connection, the opinion of the VA examiner in this case is negative. The February 2016 VA examiner examined the Veteran and reviewed his claims file and has found that there is no connection between the Veteran's current skin condition and his active duty service. The examiner's opinion is highly probative because it was based on an accurate history, including the Veteran's reports; was definitive; and was supported by an adequate rationale. There are no contrary medical opinions. 

In determining the probative value to be assigned to a medical opinion, the Board must consider three factors. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008). The initial inquiry in determining probative value is to assess whether a medical expert was fully informed of the pertinent factual premises (i.e., medical history) of the case. A review of the claims file is not required, since a medical professional can also become aware of the relevant medical history by having treated a Veteran for a long period of time or through a factually accurate medical history reported by a Veteran. Nieves-Rodriguez, 22 Vet. App. at 303-04. 

The second inquiry involves consideration of whether the medical expert provided a fully articulated opinion. See Id. A medical opinion that is equivocal in nature or expressed in speculative language does not provide the degree of certainty required for medical nexus evidence. See McLendon v. Nicholson, 20 Vet. App. 79 (2006).

The third and final factor in determining the probative value of an opinion involves consideration of whether the opinion is supported by a reasoned analysis. The most probative value of a medical opinion comes from its reasoning. Therefore, a medical opinion containing only data and conclusions is not entitled to any weight. In fact, a review of the claims file does not substitute for a lack of a reasoned analysis. See Nieves-Rodriguez, 22 Vet. App. at 304; see also Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007) ("[A] medical opinion ... must support its conclusion with an analysis that the Board can consider and weigh against contrary opinions"). 

In this case, the VA examiner has reviewed the Veteran's claims file and was apprised of the medical history and the Veteran's contentions. After examination and review, the examiner provided a definite opinion supported by the evidence. As such, the February 2016 examination is highly probative. 

The Veteran is competent to report that he has observed the current skin condition continuously since service. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed.Cir. 2007) (noting that lay testimony may be competent to identify a particular medical condition). Specifically, in Jandreau, 492 F.3d 1372 (Fed. Cir. 2007), the Federal Circuit commented that competence to establish a diagnosis of a condition can exist when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Similarly, the Court has held that when a condition may be diagnosed by its unique and readily identifiable features, the presence of the disorder is not a determination "medical in nature" and is capable of lay observation. Barr v. Nicholson, 21 Vet. App. 303 (2007) (overruled on other grounds Walker).

Lay evidence may also be competent to establish medical etiology or nexus. Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009). 

The Veteran's most specific reports were that his skin conditions began a few years after service, in 1974. He has not reported an onset in service. While the statements from his service acquaintance report in-service conditions that could have lead to the onset of a skin disease, the service acquaintance did not report any observations of the Veteran actually having such a disease in service.

It would require medical expertise to say that a skin condition that was first observed several years after service; was related to in-service events. As a lay person, the Veteran would not be competent to provide such an opinion.



In this case, however, there is significant evidence against the Veteran's reports. First, no skin condition was identified on the Veteran's examination for separation from service or in the medical history he completed at that time. Additionally, the Veteran indicated on his claim filed in November 2009 that his skin tags and moles began in 1974, three years after leaving service. On the same claim, the Veteran indicated that his dental problems, bilateral hearing loss, and tinnitus began in 1971, when he was released from active duty. 

In summary, the evidence in this case is against the claim. As such, the preponderance of the evidence is against service connection. Reasonable doubt does not arise and the claim must be denied. 38 U.S.C.A. § 5107 (b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).


ORDER

Entitlement to service connection for a skin condition is denied.




____________________________________________
Mark D. Hindin
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs